No. 24-2082
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

Equal Employment Opportunity Commission,
      Plaintiff-Appellant,

v.

BNSF Railway Company,
      Defendant-Appellee.
_____

On Appeal from the United States District Court
for the District of Nebraska
_____

**REPLY BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS PLAINTIFF-APPELLANT**
_____

ANDREW B. ROGERS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

STEVEN WINKELMAN
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii

INTRODUCTION ..........................................................................................1

ARGUMENT ................................................................................................1

I.    The EEOC plausibly pled a hostile-work-environment claim
      seeking classwide relief........................................................................1

      A.    The EEOC's operative complaint satisfied the pleading
            standard used by nearly every district court that has
            addressed the issue. ...............................................................3

      B.    BNSF cannot defend the district court's heightened
            pleading requirements.............................................................5

            1.    The district court's sameness prong contravenes
                  Supreme Court precedent, the statutory text, and
                  basic tenets of notice pleading and Title VII
                  jurisprudence. ...............................................................6

            2.    BNSF does not address the EEOC's alternative
                  argument that the SAC satisfies the district court's
                  standard. .....................................................................10

      C.    The EEOC need not provide individualized, victim-specific
            allegations for each potential class member................................10

      D.    BNSF's arguments rest on fundamental misconceptions
            about the nature of EEOC enforcement actions..........................14

II.   Genuine issues of material fact preclude summary judgment on
      the EEOC's hostile-work-environment claim seeking relief for
      Merker. ..............................................................................................17

i

A.    A reasonable jury could find that pre-limitations harassment was sufficiently related to post-limitations harassment...........................................................................................17

    1.    The relevant inquiry is whether the pre- and post-limitations harassment was "sufficiently related."...........17

    2.    BNSF fails to grapple with Merker's testimony or the timeline in this case................................................19

B.    A reasonable jury could find that the harassment Merker suffered was severe or pervasive....................................21

    1.    The district court applied an erroneous crude-environment exception............................................21

    2.    Merker suffered severe-or-pervasive harassment. ...........22

C.    A reasonable jury could find that BNSF was negligent in failing to remedy the harassment Merker experienced..............27

    1.    BNSF had actual or constructive knowledge of widespread and longstanding harassment against women. ..................................................................27

    2.    BNSF did not take prompt remedial action. .....................31

CONCLUSION ...........................................................................................33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

Appellate Case: 24-2082    Page: 3    Date Filed: 02/14/2025 Entry ID: 5485977

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Horne v. Geo Grp., Inc.,*
816 F.3d 1189 (9th Cir. 2016) ................................................................ 14, 15

*BNSF Ry. Co. v. Seats, Inc.,*
900 F.3d 545 (8th Cir. 2018) ................................................................. 27

*Burns v. McGregor Elec. Indus., Inc.,*
989 F.2d 959 (8th Cir. 1993) ................................................................. 23

*Clark v. United Parcel Serv., Inc.,*
400 F.3d 341 (6th Cir. 2005) ................................................................. 28

*Cook v. George's, Inc.,*
952 F.3d 935 (8th Cir. 2020) ................................................................. 11

*Cottrill v. MFA, Inc.,*
443 F.3d 629 (8th Cir. 2006) ................................................................. 17

*Dike v. Columbia Hosp. Corp. of Bay Area,*
No. 24-40058, 2025 WL 315126 (5th Cir. Jan. 28, 2025) ................................. 23

*EEOC v. Bass Pro Outdoor World, L.L.C.,*
826 F.3d 791 (5th Cir. 2016) ................................................................. 14

*EEOC v. Bass Pro Outdoor World, LLC,*
226 F. Supp. 3d 801 (S.D. Tex. 2016) ...................................................... 8

*EEOC v. CRST Van Expedited, Inc.,*
679 F.3d 657 (8th Cir. 2012) ........................................................... 10, 12

*EEOC v. D.H. Holmes Co.,*
556 F.2d 787 (5th Cir. 1977) ................................................................. 9

*EEOC v. Delight Wholesale Co.,*
973 F.2d 664 (8th Cir. 1992) ................................................................. 7

iii

*EEOC v. Fred Meyer Stores, Inc.*,
  __ F. Supp. 3d __, No. 4:24-cv-05085, 2024 WL 5077603 (E.D. Wash.
  Dec. 11, 2024)..................................................................................4

*EEOC v. Geisinger Health*,
  No. 21-cv-04294, 2022 WL 10208553 (E.D. Pa. Oct. 17, 2022)....................11

*EEOC v. JBS USA, LLC*,
  481 F. Supp. 3d 1204 (D. Colo. 2020) ...................................................... 4, 11

*EEOC v. Mach Mining, LLC*,
  161 F. Supp. 3d 632 (S.D. Ill. 2016) ................................................................13

*EEOC v. Peoples Bank of Indianola*,
  623 F.2d 366 (5th Cir. 1980) .........................................................................9

*EEOC v. PVNF, LLC*,
  487 F.3d 790 (10th Cir. 2007) .....................................................................23

*EEOC v. Rath Packing Co.*,
  787 F.2d 318 (8th Cir. 1986) .........................................................................15

*EEOC v. Supreme Staffing LLC*,
  No. 2:22-cv-02668, 2025 WL 333807 (W.D. Tenn. Jan. 24, 2025) ........... 13-14

*EEOC v. Tesla, Inc.*,
  727 F. Supp. 3d 875 (N.D. Cal. 2024) ...................................................... 4, 11

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002)....................................................................................... 9, 15

*EEOC v. Woodmen of World Life Ins. Soc'y*,
  479 F.3d 561 (8th Cir. 2007) .........................................................................16

*Flavel v. Svedala Indus., Inc.*,
  875 F. Supp. 550 (E.D. Wis. 1994) ...................................................................8

*Ford v. Jackson Nat'l Life Ins. Co.*,
  45 F.4th 1202 (10th Cir. 2022) .......................................................................18

Appellate Case: 24-2082     Page: 5     Date Filed: 02/14/2025 Entry ID: 5485977

*Gardner v. CLC of Pascagoula, L.L.C.,*
915 F.3d 320 (5th Cir. 2019) ...................................................25

*Gen. Tel. Co. of the Nw. v. EEOC,*
446 U.S. 318 (1980) ............................... 3, 6, 7, 8, 9, 15, 16

*Harris v. Forklift Sys., Inc.,*
510 U.S. 17 (1993) ......................................................... 3, 22

*Hathaway v. Runyon,*
132 F.3d 1214 (8th Cir. 1997) ...........................................23

*Hintz v. JPMorgan Chase Bank, N.A.,*
686 F.3d 505 (8th Cir. 2012) ..............................................5

*Jenkins v. Mabus,*
646 F.3d 1023 (8th Cir. 2011) ...........................................18

*Lewis v. City of Chi.,*
560 U.S. 205 (2010) ...........................................................15

*Mach Mining, LLC v. EEOC,*
575 U.S. 480 (2015) ................................... 11, 12, 13, 14

*Mack v. ST Mobile Aerospace Eng'g, Inc.,*
195 F. App'x 829 (11th Cir. 2006) ...................................23

*McGullam v. Cedar Graphics, Inc.,*
609 F.3d 70 (2d Cir. 2010) ...............................................18

*Milligan v. City of Red Oak,*
230 F.3d 355 (8th Cir. 2000) .............................................10

*Nanko Shipping, USA v. Alcoa, Inc.,*
850 F.3d 461 (D.C. Cir. 2017) ...........................................11

*Nat'l R.R. Passenger Corp. v. Morgan,*
536 U.S. 101 (2002) ...................................................... 17, 31

Appellate Case: 24-2082   Page: 6   Date Filed: 02/14/2025 Entry ID: 5485977

*Occidental Life Ins. Co. of Cal. v. EEOC,*
    432 U.S. 355 (1977) ...................................................................15

*Passananti v. Cook Cnty.,*
    689 F.3d 655 (7th Cir. 2012) ..................................................23

*Passmore v. Astrue,*
    533 F.3d 658 (8th Cir. 2008) ..................................................13

*Petrosino v. Bell Atl.,*
    385 F.3d 210 (2d Cir. 2004) ...................................................25

*Phelan v. Cook Cnty.,*
    463 F.3d 773 (7th Cir. 2006) ..................................................31

*Reeves v. C.H. Robinson Worldwide, Inc.,*
    594 F.3d 798 (11th Cir. 2010) (en banc)...............................24

*Rowe v. Hussmann Corp.,*
    381 F.3d 775 (8th Cir. 2004) ..................................................18

*Sandoval v. Am. Bldg. Maint. Indus., Inc.,*
    578 F.3d 787 (8th Cir. 2009) .................................. 24, 28, 29

*Schlosser v. VRHabilis, LLC,*
    113 F.4th 674 (6th Cir. 2024) ............................................27-28

*Shepherd v. Slater Steels Corp.,*
    168 F.3d 998 (7th Cir. 1999) ..................................................20

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002) .................................................................3

*Torres v. Pisano,*
    116 F.3d 625 (2d Cir. 1997) ...................................................20

*United States v. Hirani,*
    824 F.3d 741 (8th Cir. 2016) ....................................................5

vi

*Watson v. CEVA Logistics U.S., Inc.*,
    619 F.3d 936 (8th Cir. 2010) ........................................................ 24, 25

*Weitz Co. v. Lloyd's of London*,
    574 F.3d 885 (8th Cir. 2009) ............................................................... 5

*Wilkie v. Dep't of Health & Hum. Servs.*,
    638 F.3d 944 (8th Cir. 2011) ............................................................. 18

*Williams v. ConAgra Poultry Co.*,
    378 F.3d 790 (8th Cir. 2004) ............................................................. 25

*Williams v. Gen. Motors Corp.*,
    187 F.3d 553 (6th Cir. 1999) ............................................................. 23

*Winters v. ADAP, Inc.*,
    76 F. Supp. 2d 89 (D. Mass. 1999) ................................................... 19

*Yee v. City of Escondido*,
    503 U.S. 519 (1992) ............................................................................ 5

## Statutes

42 U.S.C. § 2000e-5 ..................................................................................... 7

## Other Authorities

29 C.F.R. § 1604.11 ................................................................................... 25

EEOC, *Enforcement Guidance on Harassment in the Workplace*, 2024 WL
    4563681 (Apr. 29, 2024) ........................................................... 17, 18

Fed. R. Civ. P. 23 ............................................................................... 3, 8, 9

Appellate Case: 24-2082    Page: 8    Date Filed: 02/14/2025 Entry ID: 5485977

## INTRODUCTION

The Equal Employment Opportunity Commission (EEOC) brought this enforcement action against BNSF Railway Company to stop widespread sex-based harassment, and to secure relief for Rena Merker and a defined class of women who worked out of the same railyard. Under the proper legal standards, the EEOC's operative complaint plausibly alleges a hostile-work-environment claim seeking classwide relief and genuine issues of material fact preclude summary judgment on the EEOC's claim seeking relief for Merker. In urging otherwise, BNSF misconstrues the law, the record, and the EEOC's contentions.

## ARGUMENT

### I. The EEOC plausibly pled a hostile-work-environment claim seeking classwide relief.

To plead a hostile-work-environment claim seeking classwide relief in an enforcement action, the EEOC need only provide a general description of (1) the group of aggrieved persons, (2) the nature of the harassment those individuals experienced, (3) the relevant timeframe during which the harassment occurred, (4) the source of the harassment, and (5) some basis for employer liability. Well-settled Title VII principles

1

support that pleading standard, which district courts have widely adopted. EEOC.Br.19-28.[1]

BNSF does not dispute that the EEOC's Second Amended Complaint (SAC) satisfies that standard, meaningfully engage with the reasoning of courts that have adopted it, or make much effort to defend the district court's reasoning. Instead, BNSF invents novel pleading requirements, even *more* demanding than those the district court imposed, insisting that the EEOC must identify every possible class member in the complaint and allege victim-specific facts for each individual at the pleading stage, all without the benefit of discovery.

The onerous requirements that BNSF proposes—which even the district court rejected—find no support in relevant precedent or the statutory text, contravene basic tenets of notice pleading and Title VII jurisprudence, and rest on fundamental misconceptions about the EEOC's enforcement authority. This Court should decline BNSF's invitation to strike out on that uncharted path.

---

[1] "EEOC.Br.__" means the EEOC's opening brief. "BNSF.Br.__" means BNSF's response brief.

Appellate Case: 24-2082     Page: 10     Date Filed: 02/14/2025 Entry ID: 5485977

## A. The EEOC's operative complaint satisfied the pleading standard used by nearly every district court that has addressed the issue.

It is helpful to begin with what BNSF leaves unchallenged. Perhaps most importantly, BNSF does not dispute that the SAC satisfies the pleading standard the EEOC advances here. Moreover, BNSF all but concedes that the three guiding principles on which that standard rests are sound: (1) "ordinary pleading principles apply to EEOC enforcement actions"; (2) when the EEOC sues in its own name, it "is not a mere 'proxy' for individuals," and may seek classwide relief without satisfying Rule 23; and (3) in assessing hostile-work-environment claims, courts "evaluate[] the totality of the circumstances." BNSF.Br.17, 19, 44. Supreme Court precedent compels as much. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002) (ordinary pleading standards apply to discrimination claims); *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980) (Title VII empowers EEOC to seek classwide relief); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993) (hostile-work-environment claims subject to totality-of-the-circumstances standard).

BNSF likewise does not contest that nearly every district court that has addressed the issue uses the same or a similar standard to assess class

claims in EEOC enforcement actions. *E.g.*, *EEOC v. Tesla, Inc.*, 727 F. Supp. 3d 875, 889-93 (N.D. Cal. 2024); *EEOC v. JBS USA, LLC*, 481 F. Supp. 3d 1204, 1213-16, 1219 (D. Colo. 2020). Since the EEOC filed its opening brief, at least one more district court has joined that growing consensus of persuasive authority. *See EEOC v. Fred Meyer Stores, Inc.*, __ F. Supp. 3d __, No. 4:24-cv-05085, 2024 WL 5077603, at *3-4 (E.D. Wash. Dec. 11, 2024) (EEOC plausibly pled hostile-work-environment claim seeking classwide relief where it identified or described affected group, examples of harassment, relevant date ranges, and source of harassment). BNSF does not address these decisions' reasoning at all.

BNSF suggests the EEOC forfeited its argument regarding the proper pleading standard. BNSF.Br.23. But the EEOC articulated the same standard below, relying on some of the same caselaw. App. 0253-56, R. Doc. 55 at 2-5. The EEOC also squarely preserved its contention that the SAC plausibly pled a claim for classwide relief. App. 0252-61, R. Doc. 55 at 1-10. The EEOC's refinement of that argument on appeal "does not raise a

new issue," and this Court may consider it. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 891 (8th Cir. 2009) (cleaned up).[2]

## B. BNSF cannot defend the district court's heightened pleading requirements.

Contrary to the weight of authority canvassed above, the district court here imposed two novel pleading requirements: (1) a sameness prong, requiring class members to have suffered the same harassment, by the same actor(s), in the same timeframe; and (2) a class-size prong, requiring the EEOC to indicate the number of class members. EEOC.Br.30. BNSF abandons any attempt to defend the class-size prong, and its arguments regarding the sameness prong are unavailing.

---

[2] The Supreme Court has made clear that issues or claims are subject to forfeiture, not arguments. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."). Although this Court has said it generally does not consider new arguments on appeal, it has clarified that where a party's contention "raises only a new argument, not a new issue," it "is not barred from review." *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 508 (8th Cir. 2012); *see also United States v. Hirani*, 824 F.3d 741, 751 (8th Cir. 2016) (court may consider new arguments that are "purely legal" or "encompassed in a more general argument previously raised" (citations omitted)).

5

### 1. The district court's sameness prong contravenes Supreme Court precedent, the statutory text, and basic tenets of notice pleading and Title VII jurisprudence.

BNSF cannot dispute that no other court has adopted the sameness prong as a pleading requirement. Despite asserting that "the district court's approach is not the outlier EEOC tries to make it out to be," BNSF.Br.23, BNSF is unable to locate a single case that uses the same standard to evaluate class claims in an EEOC enforcement action. While BNSF claims the court relied on "decisions *suggesting* the same approach," BNSF.Br.24 (emphasis added), none of those decisions addressed a motion to dismiss or purported to articulate pleading requirements.

BNSF next insists that Title VII itself cabins the EEOC's enforcement authority, allowing it to seek relief only for victims who suffered the same harassment, by the same actors, and at the same time as the charging party whose allegations prompted the agency's investigation (here, Merker). BNSF.Br.22-25. The Supreme Court squarely rejected that reading of Title VII in *General Telephone*, holding that "EEOC enforcement actions are not limited to the claims presented by the charging parties" or "claims typified by those of the charging party." 446 U.S. at 331. Instead, the EEOC may bring suit to remedy "[a]ny violations that [it] ascertains in the course of a

reasonable investigation of the charging party's complaint." *Id.* As this Court has recognized, "[t]he original charge is sufficient to support EEOC action, including a civil suit, for *any* discrimination … developed during a reasonable investigation of the charge[.]" *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir. 1992) (emphasis added).

*General Telephone*'s holding is firmly rooted in Title VII's text. The statute "empowers the EEOC 'to prevent any person from engaging in any unlawful [employment] practice' as set forth in the Title." *Gen. Tel.*, 446 U.S. at 323 (quoting 42 U.S.C. § 2000e-5(a)). It also "specifically authorizes the EEOC to bring a civil action against any [non-governmental] respondent" named in a charge, "the purpose of the action being to terminate unlawful practices and to secure appropriate relief … for the victims of discrimination." *Id.* at 323-24 (citing 42 U.S.C. § 2000e-5(f)(1), (g)). Citing these provisions, the Court concluded that "the EEOC need look no further than [42 U.S.C. § 2000e-5] for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals." *Id.* at 324.

By contrast, nothing in § 2000e-5 suggests the EEOC may seek relief only for "individuals who are 'similarly situated' to the charging party," let

7

alone only for individuals who suffered the same harassment, by the same actors, at the same time. BNSF.Br.23. Had Congress wished to confine EEOC enforcement actions to similarly situated individuals, it knew how to do so. *See Flavel v. Svedala Indus., Inc.*, 875 F. Supp. 550, 553 (E.D. Wis. 1994) (Age Discrimination in Employment Act allows private litigants to maintain group actions only on behalf of similarly situated employees, but does not impose the same limit on EEOC).

Additionally, the district court's sameness requirement is materially indistinguishable from Rule 23's typicality and commonality requirements, which *General Telephone* held do not apply in EEOC enforcement actions. 446 U.S. at 330-31; *see EEOC v. Bass Pro Outdoor World, LLC*, 226 F. Supp. 3d 801, 806 (S.D. Tex. 2016) (imposing "similarly situated requirement" would "import into EEOC enforcement actions requirements typically associated with Rule 23 class actions (e.g., typicality)"). The fact that the court purportedly "forswore applying Rule 23 standards," BNSF.Br.26, does not cure that defect.

BNSF attempts to minimize *General Telephone* based on the decision's vintage and vote count. BNSF.Br.16. But the Supreme Court has reiterated its holding that Title VII authorizes the EEOC to seek classwide relief

8

without satisfying Rule 23. *E.g.*, *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 288 (2002). BNSF's apparent qualms with *General Telephone* supply no basis for departing from it.

Finally, BNSF barely tries to square the sameness prong with the plausibility standard or the EEOC's independent enforcement authority. BNSF declares that "[t]he district court's actual reasoning belies EEOC's argument" regarding plausibility, but fails to explain how. BNSF.Br.25.[3] And the Supreme Court expressly rejected the reasoning of *EEOC v. D.H. Holmes Co.*, 556 F.2d 787 (5th Cir. 1977), which BNSF selectively quotes. *Gen. Tel.*, 446 U.S. at 327 n.9; *see also EEOC v. Peoples Bank of Indianola*, 623 F.2d 366, 367 (5th Cir. 1980) (*General Telephone* "repudiated *D.H. Holmes*").

In the end, the sameness prong simply cannot be reconciled with either precedent or statutory text.

---

[3] BNSF notes that some decisions the EEOC cited were not enforcement actions or did not involve Title VII hostile-work-environment claims. BNSF.Br.25-26 n.4. The EEOC cited those decisions for the general principles they articulated, not as factually analogous cases.

9

## 2. BNSF does not address the EEOC's alternative argument that the SAC satisfies the district court's standard.

The EEOC alternatively argued that the SAC satisfied even the district court's stringent pleading standard. EEOC.Br.44-46. In response, BNSF does not offer any argument or cite any authority, but instead asserts that it "cannot improve" the court's reasoning. BNSF.Br.30-31. BNSF has therefore forfeited the issue. *See Milligan v. City of Red Oak*, 230 F.3d 355, 360 (8th Cir. 2000).

## C. The EEOC need not provide individualized, victim-specific allegations for each potential class member.

BNSF alternatively argues that this Court's decision in *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012),[4] requires the EEOC to provide individualized, victim-specific allegations for *every* potential class member at the pleading stage. That is incorrect.

First, as BNSF concedes, *CRST* did not establish pleading requirements because it was decided at summary judgment. BNSF.Br.32. That distinction is meaningful because "[t]he burden at the summary judgment stage … is different and substantially more onerous than the

---

[4] BNSF cites several other decisions from the same litigation. BNSF.Br.13-14. We use "*CRST*" to refer to this Court's 2012 decision cited above.

10

pleading burden." *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467

(D.C. Cir. 2017). At the pleading stage, plaintiffs need only give defendants

fair notice of their claims and the grounds on which they rest. *Cook v.*

*George's, Inc.*, 952 F.3d 935, 938-39 (8th Cir. 2020). As district courts have

widely recognized, "the EEOC can give [a] defendant fair notice of its

claims, and the grounds upon which they rest, without pleading specific,

individualized facts establishing that each [victim] is entitled to relief." *JBS*

*USA*, 481 F. Supp. 3d at 1216; *see also Tesla*, 727 F. Supp. 3d at 892 (collecting

cases).

Accordingly, the EEOC is not "required to plead detailed factual

allegations supporting the individual claims of every potential member of a

class." *EEOC v. Geisinger Health*, No. 21-cv-04294, 2022 WL 10208553, at *17

(E.D. Pa. Oct. 17, 2022) (cleaned up). The district court here correctly

rejected BNSF's argument that *CRST* "requires the EEOC to plead

particularized facts as to each aggrieved employee." App. 0167, R. Doc. 28

at 14.

Second, to the extent *CRST* required the EEOC to identify class

members or indicate class size during pre-suit conciliation (before even

filing a civil action), that holding did not survive *Mach Mining, LLC v.*

11

*EEOC*, 575 U.S. 480 (2015). *CRST* and *Mach Mining* fundamentally addressed—and offered conflicting answers to—the same question: When conciliating a claim, what type of notice about the claim must the EEOC provide to an employer? *Compare CRST*, 679 F.3d at 675 (asking whether EEOC gave employer "adequate notice of the charges against it" (citation omitted)), *with Mach Mining*, 575 U.S. at 488 (asking what EEOC "must tell the employer about the claim"). In *CRST*, the EEOC's initial determination letter, which begins conciliation efforts, said the agency had reasonable cause to believe the employer "subjected [the charging party] and 'a class of employees' to sexual harassment on the basis of gender." 679 F.3d at 667. *CRST* held that the letter did not provide adequate notice because it did not indicate class size or identify class members. *Id.* at 676.

In *Mach Mining*, the Supreme Court held that a virtually identical determination letter *could* provide adequate notice. There, as in *CRST*, the EEOC's letter said the agency had "reasonable cause to believe that [the employer] had discriminated against the [charging party], along with a

Appellate Case: 24-2082    Page: 20    Date Filed: 02/14/2025 Entry ID: 5485977

class of women." *Mach Mining*, 575 U.S. at 484.[5] The Court held that such a letter provides adequate notice when it "describes both what the employer has done and which employees (or *what class of employees*) have suffered as a result." *Id.* at 494 (emphasis added). On remand, the district court concluded that the letter provided adequate notice because "it properly describes both what [the employer] has done (*because of their sex*, [*the employer*] *failed to recruit and hire*) and which individuals (or what class of individuals) have suffered as a result (*Charging Part*[*y*] *and a class of female applicants*)." *EEOC v. Mach Mining, LLC*, 161 F. Supp. 3d 632, 637 (S.D. Ill. 2016).

Contrary to *CRST*, *Mach Mining* made clear that the EEOC need not identify all class members or delineate class size during conciliation to provide an employer with adequate notice of a claim.[6] *See EEOC v. Supreme*

---

[5] The EEOC's determination letter here used similar language. App. 0239, R. Doc. 41-2 at 1.

[6] BNSF cites a subsequent fee award in the *CRST* litigation as evidence that *CRST*'s statements about conciliation requirements survived *Mach Mining*. BNSF.Br.21 n.3. As the EEOC has explained, EEOC.Br.41 n.12, this Court's decision affirming that award did not cite or discuss *Mach Mining*, and thus did not resolve the issue. *See Passmore v. Astrue*, 533 F.3d 658, 660-61 (8th Cir. 2008) (panel not bound by prior decision that did not squarely address issue).

Appellate Case: 24-2082     Page: 21     Date Filed: 02/14/2025 Entry ID: 5485977

*Staffing LLC*, No. 2:22-cv-02668, 2025 WL 333807, at *4 (W.D. Tenn. Jan. 24, 2025); *see also EEOC v. Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791, 804-05 (5th Cir. 2016); *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1200 & n.5 (9th Cir. 2016).

Finally, even if *CRST* were still good law, one cannot extrapolate *pleading* standards from *conciliation* requirements. *See* App. 0166, R. Doc. 28 at 13 n.4 ("[A]rguments about the adequacy of the conciliation process are better suited to a summary-judgment motion."). Doing so would conflict with *Mach Mining*'s holding that when an employer provides "credible evidence" that the EEOC's conciliation efforts fell short, the "appropriate remedy" is not dismissal, but to stay the action and "order the EEOC to undertake the mandated efforts to obtain voluntary compliance" (i.e., remand for further conciliation efforts). 575 U.S. at 495.

### D. BNSF's arguments rest on fundamental misconceptions about the nature of EEOC enforcement actions.

In addition to the reasons above, BNSF's contentions fail because they proceed from a flawed understanding of EEOC enforcement actions.

BNSF asserts, for instance, that when the EEOC brings an enforcement action, the agency "sues for individuals, not for a group."

14

BNSF.Br.21. That incorrect in two ways. First, *General Telephone* held that the EEOC "may seek specific relief for a group of aggrieved individuals." 446 U.S. at 333. Second, when the EEOC seeks relief for individuals, the agency "does not function simply as a vehicle for conducting litigation on behalf of private parties," *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 368 (1977), and it does not merely "stand in the employee's shoes" or act as "a proxy for the employee," *Waffle House*, 534 U.S. at 297-98. Instead, the EEOC "seeks to stop a harm to the public—invidious employment discrimination which is as detrimental to the welfare of the country as violations of environmental protection and consumer safety laws." *EEOC v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1986).

Despite acknowledging that the EEOC may seek groupwide relief for individuals who have not filed their own charges, BNSF calls that authority "extraordinary." BNSF.Br.16-17. But in class actions brought by private litigants, "a court may award classwide relief even to unnamed class members who have not filed EEOC charges," *Lewis v. City of Chi.*, 560 U.S. 205, 211 n.4 (2010) (citation omitted), and "it would be illogical to limit [the EEOC's] ability to seek classwide relief to something narrower than the abilities of private litigants," *Geo Grp.*, 816 F.3d at 1200. *See also Gen. Tel.*,

15

446 U.S. at 320-21, 333-34 (allowing EEOC to seek classwide relief for female employees across four states even though only four employees filed charges). Furthermore, "Title VII explicitly preserves the employee's unconditional right to vindicate her own interests by intervening in the EEOC's enforcement action." *EEOC v. Woodmen of World Life Ins. Soc'y*, 479 F.3d 561, 569 (8th Cir. 2007); *see also Gen. Tel.*, 446 U.S. at 326 (EEOC's enforcement authority "was intended to supplement, not replace, the private action").

The EEOC did not say or suggest that a hostile-work-environment claim "is 'inherently' a group claim." BNSF.Br.17-18. It said "hostile-work-environment claims inherently focus on overall circumstances rather than discrete incidents." EEOC.Br.22. Where, as here, those circumstances include widespread, longstanding, and public displays of sex-based harassment affecting women, it is reasonable to infer that women as a group experienced the workplace as objectively hostile.

## II. Genuine issues of material fact preclude summary judgment on the EEOC's hostile-work-environment claim seeking relief for Merker.

### A. A reasonable jury could find that pre-limitations harassment was sufficiently related to post-limitations harassment.

A reasonable jury could find that the harassment Merker experienced before the limitations period (i.e., before March 23, 2017—300 days before the charge was filed) was sufficiently related to the harassment during and after the limitations period, rendering all the conduct actionable. EEOC.Br.47-53; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-21 (2002). BNSF's contrary arguments misstate the law and the record.

#### 1. The relevant inquiry is whether the pre- and post-limitations harassment was "sufficiently related."

This Court has held that "sufficiently related" actions are considered "part of the same claim for hostile work environment." *Cottrill v. MFA, Inc.*, 443 F.3d 629, 635 (8th Cir. 2006). Several other circuits employ the same standard. EEOC, *Enforcement Guidance on Harassment in the Workplace* § III(C)(1), 2024 WL 4563681, at *28 & n.207 (Apr. 29, 2024)[7] (collecting cases). Whether acts are sufficiently related turns on the facts of a given

---

[7] Available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace.

Appellate Case: 24-2082     Page: 25     Date Filed: 02/14/2025 Entry ID: 5485977

case, and relevant considerations include—but are *not* limited to—the nature, frequency, and source of the harassment. *Id.* at *28 & n.208; *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1229 (10th Cir. 2022); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010).

Like the district court, BNSF treats these relevant considerations as mandatory requirements that must all be present, misconstruing this Court's precedents. BNSF.Br.35-38. The earliest decision BNSF cites, *Rowe v. Hussmann Corp.*, 381 F.3d 775, 781 (8th Cir. 2004), held only that acts of similar "nature, frequency, and severity" must be considered part of the same hostile work environment—not that these similarities *must* be present to comprise a single hostile work environment. Thus, *Rowe* set forth a sufficient condition, which BNSF mistakes for a necessary one. The two other cited decisions, which both came after *Rowe* and *Cottrill*, held only that earlier harassment that was "markedly different" from later harassment was not part of the same hostile work environment. *See Wilkie v. Dep't of Health & Hum. Servs.*, 638 F.3d 944, 952 (8th Cir. 2011); *Jenkins v. Mabus*, 646 F.3d 1023, 1027 (8th Cir. 2011).

### 2. BNSF fails to grapple with Merker's testimony or the timeline in this case.

Ultimately, whether earlier and later harassment must be similar in nature is largely academic because the record supports a finding that much of the *same* harassment Merker experienced before the limitations period *continued* into the limitations period. The most glaring examples are the offensive imagery and verbal abuse Merker witnessed. Merker testified that she saw misogynistic or sexual graffiti in BNSF facilities and locomotives from 2011 onward, including after she filed her charge. *E.g.*, App. 0466-69, 0514-15, 0528, 0533-34, R. Doc. 127-3 at 56-59, 104-05, 118, 123-24. Merker similarly testified that she heard coworkers make sexist or sexually explicit remarks from 2011 onward, including after she filed her charge. *E.g.*, App. 0470-73, 0476-84, 0488-91, 0499-500, R. Doc. 127-3 at 60-63, 66-74, 78-81, 89-90.

Given Merker's testimony, a jury could readily infer that these forms of harassment "continued into the limitations period." *Winters v. ADAP, Inc.*, 76 F. Supp. 2d 89, 96 (D. Mass. 1999). A contrary inference would require one to suppose that sexist graffiti and verbal abuse were a regular fixture in the workplace until just before March 2017, dissipated for

19

roughly 300 days, and then reemerged only after Merker filed her charge in January 2018. Viewed in any light, that inference is not reasonable.

BNSF neither grapples with that timeline nor acknowledges Merker's testimony about graffiti. Instead, BNSF suggests that in determining what conduct occurred during the limitations period, courts may consider only "incidents for which a date was available." BNSF.Br.39. BNSF cites no authority for that proposition, which would contravene basic summary-judgment tenets. After all, *when* events occurred is a quintessential question of fact, and courts must draw all reasonable inferences in the non-moving party's favor. *See Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1007 (7th Cir. 1999) (jury could "readily infer that the harassment at issue continued unabated," despite ambiguous deposition testimony).

Accordingly, Merker's inability to pinpoint when certain harassment occurred does not prevent a jury from inferring that the harassment continued into the limitations period. As BNSF acknowledges, some courts have held that plaintiffs are "not required to recite exact dates of conduct to prevail on a harassment claim." BNSF.Br.40. While some of those decisions were addressing whether harassment was pervasive (*e.g.*, *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997)), it logically follows that the same testimony

could also support an inference that persistent conduct continued into the limitations period.

Finally, the EEOC did not, as BNSF asserts, argue below that Merker suffered only one act of harassment within the limitations period. The EEOC made clear that the harassment Merker suffered was "part of a 'continuing action,'" encompassing events "both before and after Merker filed her charge," and that the specific examples she identified "were emblematic of the sexual harassment [Merker] experienced on a near daily basis throughout her employment" from 2011 through 2019. App. 1486, 1492, 1495, R. Doc. 133 at 1, 7, 10.

**B.  A reasonable jury could find that the harassment Merker suffered was severe or pervasive.**

    **1.  The district court applied an erroneous crude-environment exception.**

BNSF concedes "there is no 'crude environment' exception," but insists the district court did not apply one. BNSF.Br.51. The district court stated that "conduct that might be severe or pervasive in an office setting might not rise to that level in a rougher and more physical workplace in which the vast majority of the employees are of the same sex, such as [BNSF's] Alliance railyard"; noted the Alliance railyard was "less formal

21

than an office and one in which the vast majority of employees are of the same sex (male)"; and discounted the severity of decidedly "offensive" conduct because it occurred "on locomotives or in railyard facilities where most of the workforce are members of the same sex (male), as opposed to a professional office." App. 3409-10, 3414, R. Doc. 152 at 53-54, 58. The court applied a crude-environment exception that even BNSF agrees is wrong.

### 2. Merker suffered severe-or-pervasive harassment.

BNSF fails to engage with the appalling conduct Merker described. Instead, BNSF limits its focus to a handful of incidents that took place in July 2017 and after Merker filed her charge. BNSF.Br.47-50. As explained above, *supra* Part II.A, the harassment Merker experienced throughout her employment all contributed to a singular hostile work environment and must therefore be considered together.

Moreover, in assessing Merker's account, BNSF fails to use the totality-of-the-circumstances test that Supreme Court precedent requires. *Harris*, 510 U.S. at 22-23. Instead, BNSF considers each incident in isolation and then simply declares that any given event, standing alone, does not rise to the severe-or-pervasive level. BNSF.Br.47-50. This Court has rejected that divide-and-conquer approach, explaining that a hostile work

22

environment cannot be carved "into a series of discrete incidents." *Hathaway v. Runyon*, 132 F.3d 1214, 1222 (8th Cir. 1997) (citation omitted).[8]

Despite criticizing the EEOC for supposedly "us[ing] conclusory, attention-grabbing labels," BNSF.Br.52, BNSF's descriptions are light on details and heavy on generalities, masking the realities Merker endured. For instance, what BNSF writes off as "alleged comments" included men calling women "cunts," "bitches," and "ugly, stupid whores." App. 3411, R. Doc. 152 at 55; *see also* App. 0471, 0476-77, 0479, 0491, 0494, R. Doc. 127-3 at 61, 66-67, 69, 81, 84. These "[v]ulgar and offensive epithets" are "intensely degrading" to women, and their regular usage in the workplace may create a hostile work environment. *Burns v. McGregor Elec. Indus., Inc.*, 989 F.2d 959, 965 (8th Cir. 1993) (citation omitted); *see also Passananti v. Cook Cnty.*, 689 F.3d 655, 665 (7th Cir. 2012) ("sexually degrading, gender-specific epithets, such as 'slut,' 'cunt,' 'whore,' and 'bitch'" contribute to

---

[8] *Accord Dike v. Columbia Hosp. Corp. of Bay Area*, No. 24-40058, 2025 WL 315126, at *6 (5th Cir. Jan. 28, 2025) (district court improperly "considered each [event] singly" instead of "assess[ing] the[ir] cumulative effect"); *EEOC v. PVNF, LLC*, 487 F.3d 790, 799 (10th Cir. 2007) (same); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999) (same); *Mack v. ST Mobile Aerospace Eng'g, Inc.*, 195 F. App'x 829, 838 (11th Cir. 2006) (same).

Appellate Case: 24-2082    Page: 31    Date Filed: 02/14/2025 Entry ID: 5485977

hostile work environment (citation omitted)). Even if these comments were "not directed" at Merker, BNSF.Br.47-48, they remain "relevant and must be considered." *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 802 (8th Cir. 2009); *see also Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 812 (11th Cir. 2010) (en banc) (considering comments directed at "women as a group").

Likewise, what BNSF describes as "risqué photographs" included a picture of an employee's nude wife (which was widely distributed on workers' cars) and a publicly displayed picture of a man with his penis exposed. App. 3412, R. Doc. 152 at 56. *See Reeves*, 594 F.3d at 804, 811-12 ("one occasion" where plaintiff's coworker "displayed a pornographic image of a fully naked woman with her legs spread, exposing her vagina, on his computer screen" contributed to hostile work environment).

BNSF attacks Merker for not specifying exactly how many times she witnessed sexist graffiti, BNSF.Br.49, but victims need not "articulate with absolute precision the number of times they saw [offensive] graffiti." *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 943 (8th Cir. 2010). Where, as here, the record shows that such graffiti was "present for a considerable amount of time," or "frequently reappeared," a jury could reasonably find

24

that employees "saw th[e] graffiti on numerous occasions." *Id.*[9] Even workers' "mere awareness of [the graffiti's] ongoing presence—regardless of the exact number of times they can remember seeing it—could contribute to a hostile work environment." *Id.* at 944.[10]

Graffiti need not be "physically threatening" to contribute to a hostile work environment. BNSF.Br.49. To the contrary, this Court has reasoned that graffiti may be objectively offensive even when it "does not involve … physically threatening behavior." *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 795 (8th Cir. 2004); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 214, 221-24 (2d Cir. 2004) ("crude sexual graffiti," even if not threatening, created

---

[9] Photographs of some graffiti appear in the record. App. 1613-44, R. Doc 135-8 at 1-32. BNSF notes its previous evidentiary objections to these photographs, BNSF.Br.49 n.13, but does not press those objections on appeal. Nor could it because Merker testified that, with one exception, she took each photograph herself. App. 3324-26, R. Doc. 146 at 5-7.

[10] Much of this graffiti appeared inside locomotives or other non-public workspaces, *e.g.*, App. 2817-19, R. Doc. 135-40 at 23-25, undermining BNSF's assertion that it could not be "confidently attributed to BNSF employees," BNSF.Br.4. Moreover, harassment by non-employees can contribute to a hostile work environment for which an employer may be liable. *See Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 322 (5th Cir. 2019); 29 C.F.R. § 1604.11(e).

25

"gender-hostile atmosphere" when combined with "persistent sexually offensive remarks").

BNSF ignores evidence of men discussing Merker's body in overtly sexualized and humiliating terms, referring to her "tits" or "ass." *E.g.*, App. 0478, 0488-90, R. Doc. 127-3 at 68, 78-80. Merker's testimony makes clear that these comments were frequent, and merely recounting these events brought her to tears: "[I]t just sucked going to work when everybody hates you because you are uncomfortable with somebody talking about your tits and your ass all the time. (Deponent crying)." App. 0503, R. Doc. 127-3 at 93. The resulting anxiety took a heavy toll on Merker's mental health: her hair fell out, she vomited before work, and her weight fluctuated. App. 0589-90, R. Doc. 127-3 at 179-80.

BNSF does not dispute that men soiled locomotive restrooms but questions whether they *intentionally* did so. BNSF.Br.4. According to Merker, however, men often made their intentions clear. When asked why she "believe[d] the male employees were purposely soiling the restrooms," Merker explained that "numerous times" she heard men laugh and brag about "shit[ing] all over the bathroom" or "all over the toilet," and Merker reported soiled restrooms as often as "once every several trip[s]." App.

Appellate Case: 24-2082    Page: 34    Date Filed: 02/14/2025 Entry ID: 5485977

0561-62, R. Doc. 127-3 at 151-52; *see also* App. 0562-64, R. Doc. 127-3 at 152-54; App. 0228-29, R. Doc. 41 at 14-15 (¶¶ 79-81).

Taken together and viewed in the light most favorable to the EEOC, the evidence outlined above would support a finding that the harassment Merker suffered was severe or pervasive.

### C.   A reasonable jury could find that BNSF was negligent in failing to remedy the harassment Merker experienced.

Because the district court did not address whether BNSF knew or should have known about harassment and failed to take prompt remedial action, this Court should remand for the court to address these questions in the first instance. *See BNSF Ry. Co. v. Seats, Inc.*, 900 F.3d 545, 549 (8th Cir. 2018). If this Court were to consider them, summary judgment would remain inappropriate.

### 1.   BNSF had actual or constructive knowledge of widespread and longstanding harassment against women.

BNSF's myopic focus on whether Merker reported discrete instances of harassment, BNSF.Br.54-60, obscures the relevant question: whether BNSF had actual or constructive knowledge of widespread sex-based harassment. An employer may actually or constructively know about harassment even when the conduct goes unreported. *See Schlosser v.*

27

*VRHabilis, LLC*, 113 F.4th 674, 691 (6th Cir. 2024). An employer has actual notice when "when sufficient information…*comes to the attention of someone*" who can address or is expected to report harassment, *Sandoval*, 578 F.3d at 802 (emphasis added), which may happen, for example, when a supervisor personally witnesses the conduct, *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 350 (6th Cir. 2005). Likewise, an employer may have constructive knowledge "if the harassment was so broad in scope, and so permeated the workplace, that it *must have come to the attention of someone authorized to do something about it.*" *Sandoval*, 578 F.3d at 802 (citation omitted).[11]

Here, based on Merker's account of the offensive conduct she and other women experienced on a near-daily basis, *supra* Part II.B.2, a jury could readily conclude that the harassment was so widespread and longstanding that any reasonable employer should have known about it. *See Sandoval*, 578 F.3d at 803 ("evidence of widespread sexual harassment" is "highly relevant" to show employer had "constructive notice"). Merker

---

[11] BNSF invokes the *Ellerth/Faragher* defense, BNSF.Br.58, but that defense does not apply to claims of coworker harassment.

Appellate Case: 24-2082    Page: 36    Date Filed: 02/14/2025 Entry ID: 5485977

also testified that supervisors personally witnessed some harassment (*e.g.*, App. 0499, 0568, R. Doc. 127-3 at 89, 158), or that other women reported harassment they suffered (*e.g.*, App. 0541, 0543, 0563, R. Doc. 127-3 at 131, 133, 153).

In any event, Merker repeatedly testified that she reported myriad forms of harassment. *E.g.*, App. 0464-73, 0476-77, 0479, 0491-93, 0497, 0522, 0528-30, 0533-34, 0561, 0567, 0576, 0580-84, R. Doc. 127-3 at 54-63, 66-67, 69, 81-83, 87, 112, 118-20, 123-24, 151, 157, 166, 170-74.[12] BNSF is simply wrong that these reports did not count because the line supervisors to whom Merker complained were not managers or lacked disciplinary authority. An employee can put an employer on notice by complaining "to someone who can *reasonably be expected* to report or refer a complaint to someone who can put an end to it." *Sandoval*, 578 F.3d at 802 (emphasis added). BNSF's own policies confirm that line supervisors were expected to report

---

[12] Merker's testimony refutes BNSF's repeated assertion that the EEOC relied solely on interrogatory answers to support this proposition. BNSF.Br.5, 55 n.14, 57. Additionally, the EEOC submitted supplemental briefing below explaining how Merker's testimony supported the factual assertions in the EEOC's statement of material facts for which it had relied on interrogatory answers. App. 3326-29, R. Doc. 146 at 7-10.

Appellate Case: 24-2082    Page: 37    Date Filed: 02/14/2025 Entry ID: 5485977

or refer harassment to managers who could remedy it. *See* App. 0357,

R. Doc. 126 at 4 (line supervisors had power to refer potential rule

violations for investigation); App. 0400, R. Doc. 127-1 at 26 (BNSF policy

manual stating that "employees are required to report actual and apparent

violations of this prohibition [on workplace harassment] and all reports

will be investigated thoroughly"). In fact, BNSF's policy manual listed

supervisors as points of contact to whom employees could report

harassment. App. 0402, R. Doc. 127-1 at 28. Merker's reports to her line

supervisors were sufficient to put BNSF on actual notice of harassment.

Finally, BNSF's attempts to diminish managers' testimony that they

were aware of graffiti, BNSF.Br.57-58, invite improper inferences in its

favor. That testimony is also stronger than BNSF depicts it. *E.g.*, App. 2159-

60, R. Doc. 135-35 at 97-98 (supervisor testifying he was aware of graffiti

"for as long as [he had] worked for the railroad" and that it was

"prevalent"); App. 2806-07, 2817-20, R. Doc. 135-40 at 12-13, 23-26 (road

foreman testifying he saw graffiti up to twenty times since 2006); App.

2983-85, R. Doc. 135-41 at 113-15 (human resources manager testifying she

saw graffiti so often she kept wipes in her bag to erase it).

## 2. BNSF did not take prompt remedial action.

BNSF's analysis of the prompt-remedial-action element is similarly flawed. First, BNSF focuses exclusively on the actions it took *after* July 2017 (when Merker complained about an employee) or *after* Merker filed her charge in January 2018. As explained above however, *supra* Part II.B.2, widespread harassment had been ongoing since at least 2011 and BNSF therefore either knew or should have known about the harassment earlier. BNSF's multiyear delay was not "prompt."

Second, BNSF's argument that it took *some* remedial action to address discrete instances of harassment likewise misses the mark. Collectively, individual acts of harassment comprise "one unlawful employment practice" and cannot be parsed out "for the purposes of determining liability." *Morgan*, 536 U.S. at 116-18. Because an employer's liability turns on that single unlawful employment practice, its remediation of some individual acts does not absolve it of liability for the harassment as a whole. *See Phelan v. Cook Cnty.*, 463 F.3d 773, 785 (7th Cir. 2006) (question is whether employer "took steps to stop the harassing activity as a whole," and employer's remediation of some harassment "did not make irrelevant the harassment that occurred" earlier).

31

Third, the record reflects that the discrete remedial actions BNSF took were inadequate. BNSF highlights a training "blitz" it allegedly conducted after receiving Merker's charge, BNSF.Br.8, but there is scant evidence that this training ever took place or, if it did, that it was reasonably calculated to end the harassment. Indeed, supervisors at the Alliance railyard were unaware of or did not recall any such training. App. 2776-77, R. Doc. 135-39 at 41-42; App. 2406, 2409, R. Doc. 135-37 at 28, 31; App. 2024, R. Doc. 135-34 at 82; App. 2854-55, R. Doc. 135-40 at 60-61; App. 1532, R. Doc. 134 at 22.

Likewise, although BNSF maintains that its investigation of Merker's charge constituted appropriate corrective action, that investigation revealed that other women had suffered sex-based harassment. App. 1683-85, R. Doc. 135-12 at 1-3; App. 1688-89, R. Doc. 135-14 at 1-2; App. 1692-93, R. Doc. 135-16 at 1-2; App. 1694-95, R. Doc. 135-17 at 1-2. Yet BNSF evidently did not discipline a single male employee during any of that time. App. 2377, R. Doc. 135-36 at 1; App. 2764-65, R. Doc. 135-39 at 29-30; App. 2439, R. Doc. 135-37 at 61; App. 1983, R. Doc. 135-34 at 41. And while BNSF insists it tried to clean up sexist graffiti, the sole witness it cites said he could not recall or was uncertain about whether, when, and how BNSF

32

did so, and he couched what little he could remember as "speculation." App. 0809-12, R. Doc. 127-4 at 206-09.

## CONCLUSION

For the foregoing reasons and those in the EEOC's opening brief, this Court should reverse the district court's judgment and remand for further appropriate proceedings.

Respectfully submitted,

ANDREW B. ROGERS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

February 13, 2025

33

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,446 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

This brief complies with 8th Cir. R. 28A because it was scanned for viruses with Microsoft Windows Defender and is virus-free according to that program.

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

February 13, 2025

## CERTIFICATE OF SERVICE

I certify that on February 13, 2025, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate CM/ECF system. I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the appellate CM/ECF system.

I further certify that, pursuant to 8th Cir. R. 28A(d), within five days of receipt of the notice that the brief has been filed by this Court, ten paper copies of the foregoing brief will be sent by Federal Express to the Clerk of the Court and one paper copy will be sent by Federal Express to the following counsel of record for Defendant-Appellee:

Bryan P. Neal
HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

February 13, 2025