# No. 24-2082

## In the
## United States Court of Appeals
## For the Eighth Circuit

---

Equal Employment Opportunity Commission,

Plaintiff-Appellant,

v.

BNSF Railway Company,

Defendant-Appellee.

---

On Appeal from the United States District Court
for the District of Nebraska – Omaha Division
(8:21-cv-00369-BCB)

---

## APPELLEE BNSF RAILWAY COMPANY'S
## PETITION FOR PANEL REHEARING

---

Tara L. Paulson
Rembolt Ludtke LLP
1128 Lincoln Mall, Suite 300
Lincoln, Nebraska 68508
(402) 475-5100
TPaulson@RemboltLawFirm.com

Bryan P. Neal
Holland & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
Bryan.Neal@hklaw.com

Attorneys for Appellee BNSF Railway Company

# TABLE OF CONTENTS

Table of Authorities................................................................ii

Statement of Rehearing Issue............................................. 1

Argument .............................................................................. 2

Conclusion ........................................................................... 19

Certificate of Compliance with Rule 32(a)........................... 21

Certificate of Service .......................................................... 22

i

# TABLE OF AUTHORITIES

Page(s)

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................... 6, 7, 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................... 6, 7, 15

*Chhim v. Univ. of Tex. at Austin*,
836 F.3d 467 (5th Cir. 2016) .................................................................. 8

*Cicalese v. University of Tex. Medical Branch*,
924 F.3d 762 (5th Cir. 2019) .................................................................. 8

*Cook v. George's, Inc.*,
952 F.3d 935 (8th Cir. 2020) .................................................................. 9

*EEOC v. CRST Van Expedited*,
679 F.3d 657 (8th Cir. 2012) .......................................................... 15, 18

*EEOC v. CRST Van Expedited*,
774 F.3d 1169 (8th Cir. 2014) ................................................................ 3

*Gen. Tel. Co. of the Nw. v. EEOC*,
446 U.S. 318 (1980) ............................................................................ 18

*Harris v. Forklift Systems, Inc.*,
510 U.S. 17 (1993) ............................................................................... 14

*McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*,
780 F.3d 582 (4th Cir. 2015) .............................................................. 8, 9

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) .............................................................................. 4

ii

*Raj v. La. State Univ.*,
  714 F.3d 322 (5th Cir. 2013) ...................................................................8

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993) ...................................................................7

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) ...................................................3, 4, 5, 8

*Texas Dept. of Community Affairs v. Burdine,*
  450 U.S. 248 (1981) ...................................................................5

Appellate Case: 24-2082    Page: 4    Date Filed: 10/14/2025 Entry ID: 5567491

## STATEMENT OF REHEARING ISSUE

The Court erred in its disposition of EEOC's claims on behalf of women other than Rena Merker, specifically, in rejecting BNSF's alternative argument that EEOC was required to plead facts going to each element of the claim it asserted for each such woman. In reaching that conclusion the Court mistakenly relied on a Supreme Court case holding that a plaintiff need not plead an *evidentiary prima-facie case*, overlooking or misapprehending the distinction between such a prima-facie case and the *elements of a claim*, which always must be alleged to survive a motion to dismiss.

1

## ARGUMENT

BNSF seeks panel rehearing with respect to the disposition of the claims EEOC asserted for women other than Rena Merker. As the district court stated, those claims involve consideration of the "rarely litigated issue of what the EEOC must do to state a claim when bringing suit on behalf of several individuals." App.0167; R.Doc. 28, 14. BNSF focuses its rehearing petition on only one aspect of this Court's opinion reversing and remanding the district court's judgments (the "Decision")—the analysis under the *"Plausibility of the EEOC's Claim"* section of the Decision that rejected BNSF's alternative argument for affirmance. Op. at 16–18.[1] Respectfully, that analysis contains a critical error that directly affected the disposition of the claims for women other than Merker. Correction of the error requires affirmance rather than reversal of that aspect of the district court's judgment.

As the Decision explained, BNSF argued that because at trial or on summary judgment EEOC must prove each element of a hostile-work-environment claim on behalf of each alleged aggrieved woman, EEOC

---

[1] "Op." citations are to the slip opinion issued on August 28, 2025.

Appellate Case: 24-2082    Page: 6    Date Filed: 10/14/2025 Entry ID: 5567491

also must plead facts that if true would support each element for each woman (regardless of whether each woman is named in the complaint). Op. at 16. EEOC conceded—and the Decision confirmed—the first point: to ultimately prevail, EEOC must prove each element of a hostile-work-environment claim on behalf of each alleged aggrieved woman. Op. at 16. That is, there are multiple *separate* claims that must be proven individually. *See id.*[2] But the Decision held that EEOC did not need to plead facts going to each element of each claim for each woman. Op. at 16–17.

In rejecting BNSF's argument otherwise, the Decision relies on the Supreme Court's holding in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002), that "an employment discrimination plaintiff need not plead a prima facie case of discrimination." Op. at 16–17. Thus, the Decision holds that EEOC did not have to plead facts going to each element it would have to prove at trial and that EEOC pleaded a plausible case without facts going to all of the elements of each claim. *Id.*

---

[2] *See also EEOC v. CRST Van Expedited*, 774 F.3d 1169, 1178–79 (8th Cir. 2014) (rejecting EEOC's argument that its claim was one overarching harassment claim).

3

The error in that analysis is that there is a critical distinction between a prima-facie case and the *elements* of a claim. A prima-facie case—as referred to in *Swierkiewicz*—is an evidentiary framework for proving disparate-treatment discrimination circumstantially, and one not even applicable to all discrimination cases. It is entirely different from the ultimate elements of a cause of action.

Specifically, what the Supreme Court was addressing was a prima-facie case under the *McDonnell Douglas* framework. *Swierkiewicz*, 534 U.S. at 508 ("This case presents the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."). That standard, as the Supreme Court explained, is about evidence. *Id.* at 510 ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement."). It "relates to the employee's burden of presenting evidence that raises an inference of discrimination" after which a burden of production falls on the employer to justify the challenged action. *Id.*; *see*

4

*also Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–255 & n.8 (1981).

The *McDonnell Douglas* standard does not apply to all discrimination cases. *Swierkiewicz*, 534 U.S. at 511 ("the *McDonnell Douglas* framework does not apply in every employment discrimination case"). "For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." *Id.* "Moreover, the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Id.* at 512. Even defining a prima-facie case may require the need for discovery to "unearth[] relevant facts and evidence." *Id.* "Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." *Id.*

In sum, a prima-facie case is a method of proving a claim and thus quite different from the elements of a claim. And none of the concerns the Supreme Court set out for the former apply to the latter. The elements of a claim are established by law, known at the time the lawsuit is filed, and must be proven in every case to establish the defendant's liability. *See*

5

Op. at 16. Given the differences between the elements of a claim and a *McDonnell Douglas* prima-facie case, the Supreme Court's holding that a plaintiff need not plead a prima-facie case when relying on circumstantial evidence of discrimination has no bearing on whether a discrimination plaintiff must plead facts going to each *element* of the claim.

As the Court noted here, *Twombly*[3] was decided after *Swierkiewicz* and stated that it did not overrule the holding in *Swierkiewicz*. There is no dispute on that point: the holding of *Swierkiewicz* was that a discrimination plaintiff need not plead a *McDonnell Douglas* prima-facie case, and that holding is unaffected by either *Twombly* or *Iqbal*.[4] But it answers an entirely different question than whether a plaintiff must plead facts going to the *elements* of each claim.

Under *Twombly* and *Iqbal* every plaintiff must plead *facts* sufficient to establish each *element* of each claim. That requirement is clear because the standard requires plausibility, which the Supreme Court

---

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Appellate Case: 24-2082     Page: 10     Date Filed: 10/14/2025 Entry ID: 5567491

said means that the factual allegations permit a "court to draw the reasonable inference that the defendant *is liable* for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly,* 550 U.S. at 556). Without facts addressing each element of a claim, there is no way to conclude that a defendant "is liable" on the claim asserted. Thus, courts evaluate motions to dismiss against the elements of a claim, including in the decisions BNSF cites later in this petition. Doing so does not entail evaluating whether a pleading states a *McDonnell Douglas* prima-facie case contrary to *Swierkiewicz*.

Other courts have recognized the distinction between a *McDonnell Douglas* prima-facie case and the elements of a claim and how it affects evaluation of a motion to dismiss:

> In Appellants' view, the district court confused the plausibility pleading standard of *Twombly / Iqbal* with the evidentiary standard of *McDonnell Douglas*. Under the *Twombly / Iqbal* pleading standard, a complaint must "state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. This differs, of course, from the *McDonnell Douglas* standard, which "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

7

> Appellants are right, as the district court acknowledged, that the Supreme Court has distinguished the *McDonnell Douglas* evidentiary standard from pleading requirements. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). A district court therefore errs by requiring "a showing of each prong of the prima facie test for disparate treatment at the pleading stage[.]" *Id.* But we have also explained that, although plaintiffs do not "have to submit evidence to establish a prima facie case of discrimination at this stage, [they must] plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make [their] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (emphasis added).

*Cicalese v. University of Tex. Medical Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019); *see also McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d 582 (4th Cir. 2015) (although the district court erred in requiring the plaintiff to plead a prima facie case, she still had to plead the elements of the claim; plaintiff asserted a Title VII claim, "which means that she was required to allege facts to satisfy the elements of a cause of action created by that statute").[5]

---

[5] *McCleary-Evans* also explains that *Twombly* did modify *Swierkiewicz* in one respect. *Swierkiewicz* had relied on the then-applicable *Conley*

8

This Court has taken the same approach and recognized the distinction between a prima-facie case and the elements of a claim. In *Cook v. George's, Inc.*, 952 F.3d 935 (8th Cir. 2020), the Court determined that the district court had erred by requiring an ADA plaintiff to plead a prima-facie case. But, critically, the Court did not stop there. It reviewed the complaint to determine whether the plaintiff had pleaded facts supporting the elements of the claim and reversed only because the plaintiff had done so:

> Finding the prima facie case standard inappropriate at this stage does not end our inquiry. We now turn to the statutory elements of an ADA claim….The allegations in Cook's complaint are sufficient to state a claim based on these elements.

*Cook*, 952 F.3d at 939–940. One judge dissented, but only based on a disagreement as to whether the plaintiff had adequately alleged a particular "statutory element" of the claim. *Id.* at 940–41 (Stras, J., dissenting).

Respectfully, the Decision mistakenly relies on a holding that a plaintiff need not plead an evidentiary prima-facie case to rule that a plaintiff (or at least EEOC) need not plead the elements of each claim it

---

standard for pleading, and that aspect of *Swierkiewicz* no longer applies. *McCleary-Evans*, 780 F.3d at 586–87.

Appellate Case: 24-2082    Page: 13    Date Filed: 10/14/2025 Entry ID: 5567491

asserts. That reasoning is flawed for the reasons stated above, and the holding conflicts with *Cook* and other decisions requiring pleading of the elements of every claim asserted.

Moreover, although insisting on the pleading of an evidentiary prima-facie case would impose a heightened standard, the Decision here does the opposite. Requiring a plaintiff—even EEOC—to plead facts sufficient to establish each element of a claim asserted simply applies the *Twombly* requirements under the rule that all parties here agree on—the ordinary pleading rules apply. Op. at 11. By contrast, what EEOC really wants and what the Decision allows is a *lesser standard* for EEOC representative actions, one that says the agency need *not* plead facts that align with the elements it must later prove—even though every other plaintiff must do exactly that. The Court's acceptance of EEOC argument, based on a mistaken application of *Swierkiewicz*, allows EEOC to "unlock the doors of discovery," *Iqbal*, 556 U.S. at 678, based on a lower standard than all other plaintiffs and thus runs contrary to *Twombly* and *Iqbal*.

In sum, the Decision incorrectly applies a holding that a plaintiff need not plead a *McDonnell Douglas* prima-facie case to mean that a

10

plaintiff need not plead facts supporting each element of each claim asserted. Doing so provides EEOC with a lower pleading standard than other plaintiffs. It also creates confusion going forward for all plaintiffs. BNSF does not, of course, assume that the Decision intended either outcome, which results from generic use of the term "prima-facie case" sometimes as a synonym for elements. But the crucial point is that *Swierkiewicz* was referring specifically to a *McDonnell Douglas* prima-facie case, not to the elements of a claim. The Court should therefore modify the Decision to make it clear that EEOC, like all other plaintiffs, must plead facts that support every element of every cause of action asserted.

After rejecting BNSF's argument that EEOC was required to plead facts going to each element of its claim for each woman, the Decision goes on to discuss *Twombly's* plausibility standard. The discussion appears to treat plausibility as a lower standard than the requirement that a plaintiff must plead facts going to each element of each claim. If that was the intent, the discussion is incorrect for the reasons stated above. Or, to the extent the Court intended that analysis to suggest that EEOC here *has* pleaded the elements of a hostile work environment claim for each

11

woman it purports to sue for, that aspect of the Decision also is mistaken for the following reasons.

First, EEOC does not even claim that it alleged facts that went to every element of each cause of action it asserted for each woman. It pleaded in generalities and specifically only as to Merker and the "exemplars." Second, the facts EEOC as discussed in that portion of the Decision pleaded plainly do not support every element of a hostile-work-environment claim as to each individual. The facts simply do not address each element as to each person.[6]

In theory, to satisfy the plausibility standard for each female BNSF employee on whose behalf it sued EEOC should have simply averred as fact each required element of the claim for each person. Here, EEOC could not do so and never asked for leave to do so. That may be because it in fact did not investigate every individual's claim as it was required to

---

[6] To be clear, BNSF does not press the issue whether every woman must be identified in the complaint. If EEOC has actually investigated the facts concerning each woman, why it would decline to identify them is baffling given that it does so routinely when it sues for individuals, as it did with Rena Merker. But the agency could easily plead facts for each woman's claim without naming each woman.

Appellate Case: 24-2082    Page: 16    Date Filed: 10/14/2025 Entry ID: 5567491

do before filing a lawsuit. Or, perhaps the agency did investigate but learned that many female employees at Alliance said they didn't experience the alleged sexually oriented graffiti or conduct or that if they did it did not make their working conditions abusive or hostile.

So EEOC took a different tack. It pleaded in great detail specific incidents reported by Merker plus a few reported by four "exemplars." It then suggested that because Alliance is a single workplace an inference could reasonably be drawn that all of the female employees on whose behalf it was suing were subjected to the same conduct reported by Merker and the "exemplars," *and that was enough*. The Decision agrees with EEOC:

> The district court found that the EEOC's First Amended Complaint stated a plausible claim for relief as to Merker. The Second Amended Complaint further included group allegations, including information on four anonymous exemplars. Like Merker, these exemplars were in a protected class and suffered unwelcome harassment because of their sex. *As employees at the Alliance Railyard, it is plausible to infer that all women in the group endured similar unsanitary bathroom conditions and saw the graffiti and sexual images at that location….*We conclude that the EEOC stated a plausible hostile work environment claim on behalf of the group of aggrieved women.

Op. 17–18 (emphasis added).

13

What that reasoning overlooks, as BNSF showed above, is the need for averments on every element of every woman's claim. Given what is known about the actual facts, it may be close question whether a *reasonable* inference can be drawn from the single-workplace setting that *every* female employee at Alliance encountered the sexually-oriented graffiti and conduct recounted by Merker and the "exemplars." But even accepting for the sake of argument that the inference is at least plausible in the abstract, there is still a critical problem.

Experiencing or knowing about conduct is only one element of a hostile-work-environment claim. *See* Op. at 16. And two other elements of the claim are by definition in whole or part *personal*—or, to use the legal words, "subjective" or "individualized." Those two elements are first, unwelcomeness, and second, interference with working conditions—a "hostile" or "abusive" workplace—with the latter containing both an objective and a subjective component. *See, e.g., Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22 (1993).[7] Sharing a worksite does not permit any

---

[7] The fifth element—employer liability—also has aspects that are individualized, including with respect to when and what an employee reported, whether the employer otherwise had knowledge of that conduct,

Appellate Case: 24-2082    Page: 18    Date Filed: 10/14/2025 Entry ID: 5567491

plausible inference about those two elements of a hostile-working-environment claim. It "stops short of the line between possibility and plausibility of entitlement to relief." *See Twombly*, 550 U.S. at 557 (cleaned up).

Consider this variation on a well-known illustration of proper inference. All fifty employees of a company appeared one morning in the lobby of their office building carrying dripping umbrellas. A reasonable inference from those facts is that it was a rainy day. *See, e.g.*, Seventh Circuit Pattern Criminal Jury Instructions, Preliminary Instructions, Direct and Circumstantial Evidence (2023). But what cannot be even plausibly inferred from the facts is which employees are happy or unhappy about the rain or which employees the rain made late to work. The facts of sharing a workplace and experiencing a rainy day simply provide no information regarding the employees' personal feelings about the rain or the rain's effect on their work. For the same reason, no plausible inferences can be

---

and whether the employer adequately responded to the particular conduct that affected a given individual. *See, e.g., EEOC v. CRST Van Expedited*, 679 F.3d 657, 691, 693 (8th Cir. 2012)(certain women failed to report harassment or did so "too late to afford CRST a reasonable opportunity to promptly and effectively address it," and employer lacked constructive knowledge of that alleged harassment); *id.* at 692–93 (as to certain other women, employer adequately responded to the harassment).

Appellate Case: 24-2082     Page: 19     Date Filed: 10/14/2025 Entry ID: 5567491

drawn about the unwelcomeness or the working-conditions elements of EEOC's hostile-work-environment claim for unidentified female BNSF employees at Alliance from the fact that they all worked at Alliance.

What EEOC's complaint relies on instead of logical inference from pleaded facts, and what the Decision seemingly adopts and approves, is simply a generalization—a stereotype—about the women at Alliance: if Merker and the "exemplars" found the alleged sexually oriented conduct unwelcome and believed it made their working conditions hostile, so must have all of the other female employees on whose behalf EEOC purports to sue. It is no different than if one were to argue in the rainy day example that the pleaded facts did allow a plausible inference about which employees were happy and unhappy about the rain because "everyone knows women don't like to get their hair wet." No court today would accept, or even countenance, such an asserted "plausible inference."

Yet the Decision, if meant to hold that EEOC's Second Amended Complaint plausibly alleged *every element* of the separate hostile-work-environment claims it asserted for each of a number of unidentified female employees at Alliance, necessarily rests on a similar gender generalization: all females who choose to work for BNSF at Alliance would, if

16

they encountered the sexually oriented conduct described in the Decision, feel and respond in the same way as Merker and the "exemplars" claimed to feel and respond. "Everyone knows all women would be shocked, offended, and traumatized by the alleged events." That stereotype cannot be the basis of a "plausible inference."[8]

Because generalizations about groups are not the answer, plausibly pleading all elements of a hostile-work-environment claim on behalf of more than one person requires, due to the uniquely subjective nature of the elements, actually getting information from each individual sued for, separately. That is hardly an onerous or remarkable burden, especially for a plaintiff with the investigative resources—and responsibilities—of

---

[8] That the core premise turns on a generalization is not an academic distinction. The evidence in the case later revealed that when, after Merker filed her EEOC charge, BNSF interviewed every woman it could, the result was a mixed bag. Some did not claim to experience similar conduct and some who did witness aspects of what EEOC has described were not offended by it. *See* App.1683–1705; R.Doc. 135-12–135-22 (statements of female other employees). BNSF understands that this petition addresses only the pleadings but points to that evidence to highlight that the generalizations EEOC makes about women at Alliance are in fact generalizations.

Appellate Case: 24-2082    Page: 21    Date Filed: 10/14/2025 Entry ID: 5567491

EEOC. This Court has in fact already imposed the requirement on the agency. *CRST*, 679 F.3d at 672–77.

The Decision suggests that a statement from *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318 (1980), means that EEOC can keep to itself the information it must obtain under *CRST I* until the employer asks for it in discovery (or through another pretrial mechanism). Op. at 17. But that view overlooks the transformational change in philosophy regarding pleading versus discovery represented by *Twombly/Iqbal*. Can there be any reasonable doubt that today the sentence from *General Telephone* the Decision quotes—if the current Supreme Court even agreed with it— would include "the requirement of a plausibly pleaded claim" *first* on the list of tools available to a district court to protect employers—and employees—against misuse by EEOC of the extraordinary power to sue for unconsenting individuals that *General Telephone* created? Could it be that today ordinary private plaintiffs must first investigate the facts and law then show their work in pleadings meeting the requirements of Rule 8 and Rule 11 before discovery is allowed, but EEOC, with its superior investigative authority (and legal obligation to investigate before suing),

18

is exempt? That cannot be the law. As all parties agreed, the ordinary pleading rules apply here.

## CONCLUSION

Holding that EEOC is not required to plead a prima-facie case of discrimination is correct but BNSF did not argue otherwise. Moreover, that holding does not answer the question whether EEOC must plead facts going to every element of every claim. Under *Twombly* it must; otherwise it has not pleaded facts that if true would support liability. Because EEOC did not plead such facts, did not claim to do so, and never asked for leave to amend to do so, the Court should hold that the agency did not satisfy its pleading obligations for claims on behalf of women other than Rena Merker. BNSF asks that the Court grant rehearing and modify the previous disposition to affirm the judgment of the district court dismissing EEOC's claims on behalf of women other than Merker.

19

Dated: October 14, 2025.

Respectfully submitted,

s/ Bryan P. Neal
Bryan P. Neal
Holland & Knight LLP
One Arts Plaza
1722 Routh Street
Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (Fax)
Email: bryan.neal@hklaw.com

Tara L. Paulson
Rembolt Ludtke LLP
1128 Lincoln Mall, Suite 300
Lincoln, Nebraska 68508
(402) 475-5100
TPaulson@RemboltLawFirm.com

Attorneys for Defendant-Appellee
BNSF Railway Company

20

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  The brief complies with the type-volume limitations of Fed. R. App. P. 40 because, excluding the parts of the document exempted by Rule 32(f), this brief contains 3,857 words.

2.  The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook font, 14 point.

3.  This brief has been scanned for viruses and is virus-free in compliance with 8th Cir. R. 28A(h)(2).

s/Bryan P. Neal
Bryan P. Neal
Attorney for Defendant-Appellee
BNSF Railway Company

21

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2025 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Bryan P. Neal
Bryan P. Neal
Attorney for Defendant-Appellee
BNSF Railway Company

Appellate Case: 24-2082    Page: 26    Date Filed: 10/14/2025 Entry ID: 5567491